IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYL JOHNSON, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 9452 |
| ) | |
| CYPRESS HILL, BMG SONGS, INC., ) | HONORABLE CHARLES R. NORGLE |
| MCA MUSIC PUBLISHING, SOUL ) | |
| ASSASSINS MUSIC, and SONY ) | |
| MUSIC, INC./COLUMBIA RECORDS, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendants' Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendants' Motion for Summary Judgment is denied.

## I. BACKGROUND[1]

### A. Facts

#### *1. The Parties*

This case arises out of a dispute concerning a song created by Plaintiff Syl Johnson ("Johnson"), and an assignment regarding the rights to that song. Johnson is a musician, and under the business names of Syl-Zel Music, he composes and publishes music. Defendant Cypress Hill is a

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

musical group from Los Angeles, California. Defendant BMG Songs is a division of BMG Music Publishing, whose principal business is the publishing of musical compositions. Defendant Sony BMG Music Entertainment is a successor-in-interest to Sony Music Entertainment, Inc. Columbia Records was an unincorporated division of Sony Music Entertainment, Inc. Third Party Defendant Sunlight Records is an Illinois corporation which is engaged in the business of publishing and recording music. Sunlight does business under various names such as Twilight Records, Twinight Records, Edgewater Music, and Midday Music.

## 2. *The Recording Agreement and subsequent musical composition*

In 1967, Johnson signed a one year agreement with Twinight Records to record songs (the "Recording Agreement"). This agreement contained an option for Twinight to extend the terms of the contract upon its expiration. Then, in 1968, Twinight exercised its option and extended the term of the Recording Agreement, and did so subsequently until August 29, 1971. Johnson, however, claims that he never signed the Recording Agreement contained in the record, and that to his knowledge, no extensions of the Recording Agreement were ever executed. According to Johnson, he owned twenty-five percent (25%) of Twinight Records, while Howard Bedno ("Bedno") owned fifty-percent (50%), and Peter Wright ("Wright") owned the remaining twenty-five percent (25%). However, Twinight Record's articles of incorporation submitted by Defendants only lists Bedno and Wright as shareholders of the corporation. Conversely, Johnson submits a copy of a certificate of shares in Twinight Records, Inc., in which Johnson holds three hundred and thirty three (333) shares.

Pursuant to Paragraph Four of the Recording Agreement:

> [a]ll masters recorded hereunder and all matrices and phonograph records manufactured therefrom, together with the performances embodied thereon, shall be entirely our property, free from any claims whatsoever by you or any person deriving any rights or interests from you. Without limiting the generality of the foregoing, we,

2

and/or our subsidiaries, affiliates and licensees shall have the unlimited right, from time to time, to manufacture, by any method now or hereafter known, phonograph records an other reproductions on any mediums or devices now or hereafter known, of the compositions performed by you and recorded hereunder, and to sell, transfer or otherwise deal in the same throughout the world under any trade-marks, trade names and labels, or to refrain from such manufacture, sale and dealing.

In 1968, Johnson, along with Glen Watts ("Watts") and Jim Jones ("Jones") wrote the song "Is It Because I'm Black?" This song is the subject of the present lawsuit. On October 7, 1969, Jones and Watts signed a songwriters' contract with Midday Music, Syl-Zel, and Hightone Music (the "Songwriters' Contract"). The contract states that Jones, Watts, and Johnson are the writers of "Is It Because I'm Black?" Moreover, the Songwriters' Contract provided that Jones and Watts sell, assigned, transfer and deliver their respective shares to the song to Midday Music, Syl-Zel, and Hightone Music. Specifically, the contract states that the assignment includes "the title, words and music thereof, and the right to secure copyright therein throughout the entire world and to have and to hold said copyright and all rights whatsoever nature thereunder existing, including any and all renewals thereof." In exchange for this assignment, Midday Music, Syl-Zel, and Hightone agreed to pay Jones and Watts royalties for various uses and sales of the song, including piano and vocal copies, sheet music, and licenses to use the musical composition. Then, on December 23, 1969, Midday Music filed a "Publishers Clearance Form" for the song "Is It Because I'm Black?"

### 3. *Cypress Hill uses "Is It Because I'm Black?"*

In 1993, Cypress Hill released its album "Black Sunday." The album was a huge success, selling over 3.3 million copies worldwide. Included on "Black Sunday" is the instrumental piece, "Interlude." Cypress Hill created "Interlude" by taking "Is It Because I'm Black?," removing the vocals, and using only the instrumental portion. In November 1996, Cypress Hill,

under their publishing company Cypress Phunky Music received a copyright for "Interlude." Johnson alleges that Cypress Hill falsely swore that they created the song in order to obtain the copyright. Pursuant to an agreement with Ruffhouse Records, Sony BMG is the exclusive owner of the master recording "Interlude."

On March 19, 2004, thirty-six years after Johnson recorded "Is it Because I'm Black?," the members of Cypress Hill entered into a settlement agreement with Sunlight Records, which was doing business as Twinight/Twilight Records and Edgewater Music.[2] This Twinight Records is a separate entity than the company that entered into the Recording Agreement with Johnson in 1967. According to Johnson, the only relationship between Sunlight Records and the original Twinight Records is that Wright is a controlling shareholder in Sunlight. This Settlement Agreement provides that Sunlight Records is the "owners of a one hundred percent share of the rights, title and interest in and to the master recording and composition of "Is it Because I'm Black?"

Under the terms of the Settlement Agreement, Cypress Hill agreed to pay Sunlight twenty-five thousand dollars ($25,000.00) in exchange for a release for Cypress Hill "and each of its predecessors, successors, licensees, music publishers and/or its administrators . . . from any and all claims, actions, causes of action, suits debts, dues, sums of money . . . and liabilities whatsoever. . . . " This agreement included, but was not limited to claims relating to Cypress Hill's alleged unauthorized use of "Is It Because I'm Black?" under the song "Interlude" as featured on the album "Black Sunday."

---

[2]To further add to the multitude of corporations involved in this case, Johnson includes a printout of a "Corporation File Detail Report" from the Illinois Secretary of State's webpage, wherein it states that the President of "Twinight Records, Inc." is Syl Johnson. See Pl.'s Aff., Ex. D. Neither party offers an explanation as to why Twinight Records is a corporation owned by both Plaintiff and Third-Part Defendant.

4

Plaintiff claims that this settlement is unenforceable because it is merely an "end-run around Mr. Johnson's rights" by virtue of the fact that the Settlement Agreement was entered into on March 19, 2004, two months after Johnson filed his initial Complaint on December 31, 2003. Johnson further argues that $25,000 is not "reasonable consideration" in exchange for the rights being released.

## B. Procedural History

On April 23, 2004 Johnson filed his Amended Complaint, alleging copyright infringement pursuant to 17 U.S.C. § 502, et seq. Then, on September 21, 2004, Defendant Cypress Hill filed a Third-Party Complaint against Sunlight Records for indemnification for any losses incurred in connection with the Amended Complaint. On January 17, 2006, Defendants and Third Party Defendants filed their Motion for Summary Judgment against Johnson. Johnson filed his Response on February 15, 2006, and Defendants Replied on March 22, 2006. Then, on May 19, 2006, the court held oral arguments on the issues raised in the parties brief. The court took the matter under advisement. Defendants' Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

## A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56©; see also Healy v. City of Chicago, 450 F.3d 732, 738 (7th Cir. 2006). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

**B. Genuine Issues of Material Fact Remain Concerning the Ownership of the Song at issue**

*1. The Applicable Law*

In order to state a claim for copyright infringement, "a plaintiff must prove (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." Incredible Technologies, Inc. v. Virtual Technologies, Inc., 400 F.3d 1007, 1011 (7th Cir. 2005).

6

Furthermore, Pursuant to 17 U.S.C. § 201(d), "[T]he ownership of a copyright may be transferred in whole or in party by any means of conveyance or by operation of law, and my be bequeathed by will or pass as personal property by the applicable laws of interstate succession." 17 U.S.C. § 201(d)(1). A transfer of copyright ownership must be in writing. Billy-Bob Teeth, Inc. v. Novelty, Inc., 329 F.3d 586, 591 (7th Cir. 2003). With these principles in mind, we turn to Johnson's claim.

## 2. Genuine Questions of Material fact as to the Ownership of "Is It Because I'm Black?"

It is undisputed that Cypress Hill copied "constituent elements of the work that are original." See Incredible Technologies, Inc., 400 F.3d at 1011. However, Plaintiff and Defendants each claim ownership to "Is It Because I'm Black?" Defendants argue as a result of the Recording Agreement, Plaintiff "conveyed to Third Party Defendant Sunlight Records sole ownership, including 100% of the rights in the copyright, for the master recording "Is it Because I'm Black?"" Def.'s Mot. for Summ. J., at 9. As a result, Defendants claim, Johnson no longer had any rights in the composition, Sunlight Records was free to license the song to whomever they pleased, and Johnson is not owed any compensation. Defendants further claim that Plaintiff has not created a genuine issue of material fact, in spite of the "self-serving affidavit largely unsupported by any documentation . . . ." Def.'s Reply. at 2. However, the court may consider such affidavits if they are based on personal knowledge. See Dalton v. Battaglia, 402 F.3d 729, 735 (7th Cir. 2005) (citing Payne v. Pauley, 337 F.3d 767, 772-73 (7th Cir. 2003)).

On the other hand, Johnson alleges that Sunlight Records, the releaser under the Recording Agreement, has no rights in "Is it Because I'm Black?" because Sunrise is not a successor to the original Twinight Records, Inc. The only relationship between these two

7

companies is that Peter Wright ("Wright") is the controlling shareholder of Sunlight Records, and a minority shareholder of Twinight Records. Johnson claims in his affidavit that in 1977 or 1978, that Bedno told Plaintiff that Twinight Records was finished, and that Johnson could take all of the master recordings for himself. Therefore, Plaintiff claims, any agreement entered into by Sunlight granting a license in the song is void because Sunlight had no rights in the work to transfer. However, Defendants submit no evidence to establish that Sunlight was the successor in interest of Twinight. Sunlight Records was founded twenty years after Twinight Records dissolved. Defendants offer no evidence to suggest that Sunlight is a successor to Twinight Records.

In viewing all the facts in the light most favorable to the non-moving party, a reasonable jury could conclude that either party still owns the rights to "Is it Because I'm Black?" Here, it is unclear as to results of Twinight's assets upon its dissolution in 1978. Whether Johnson's claim of his meeting with Bedno in the late 1970s is reliable is an issue for the jury. See Smith v. Ford Motor Co., 215 F.3d 713, 719 (7th Cir. 2000) (question of credibility is factual determination for jury to decide). If the assets of the company, including the copyright of "Is it Because I'm Black?" stayed with Wright, the managing shareholder, than a jury could conclude that Sunlight Records retained the authority to grant Cypress Hill a license in the song. However, if Johnson acquired the rights to the song, then Sunlight had no authority to grant its license in 1994. Additionally, if Johnson was a shareholder in the original Twinight Records, Inc., along with Wright, then Johnson is due compensation for the royalties arising from the licensing of "Is It Because I'm Black?" Based on these facts, there is at least a genuine issue of material fact as to the ownership of the song at issue.

Any resolution of this dispute at this stage would require the court to make a finding of fact as to one of the parties. "It is rarely appropriate on summary judgment for a district court to make a finding on a state of mind." McGreal v. Ostrov, 368 F.3d 657, 677 (7th Cir. 2004). At the summary judgment stage, "the party opposing a motion for summary judgment must take reasonable steps to provide the district court sufficient evidence to create a genuine issue of material fact." Shank v. William R. Hague, Inc., 192 F.3d 675, 683 (7th Cir. 1999) (citing Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 503-04 (7th Cir. 1999) (indicating that summary judgment is the "put up or shut up" moment in a lawsuit)). As a result, the court must deny Defendants' Motion for Summary Judgment.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 7-20-06

9